## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**STEPHEN WELCH**                                                                                        **PLAINTIFF**

**V.**                                                    **CIVIL ACTION NO.  3:14CV388 DPJ-LRA**

**CAROLYN W.  COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**                               **DEFENDANT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Stephen Welch appeals the final decision denying his application for Social

Security Disability Insurance Benefits ("DIB").  The Commissioner requests an order

pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law

Judge.  Having carefully considered the hearing transcript, the medical records in

evidence, and all the applicable law, the undersigned recommends that the case be

remanded.

### Factual and Procedural Background

On August 9, 2011, Welch protectively filed a DIB application alleging he became

disabled on March 7, 2007, due to Reflex Sympathetic Dystrophy Syndrome ("RSDS"),

(also known as Complex Regional Pain Syndrome ("CRPS")) in his left arm, an arm

injury, and chronic pain.  He was 33 years old at the time of filing with past work

experience as a construction laborer, forklift operator, cable installer, and framing

carpenter.  Following agency denials of his application, an Administrative Law Judge

("ALJ") rendered an unfavorable decision finding that he had not established a disability

within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's

request for review.  He now appeals that decision.

Upon reviewing the evidence, the ALJ concluded that Plaintiff was not disabled

under the Social Security Act.  At step one of the five-step sequential evaluation,[1] the ALJ

found that Plaintiff had not engaged in substantial gainful activity from his onset date of

March 7, 2007, through his date last insured of December 31, 2009.  At steps two and

three, the ALJ found that although Plaintiff's "loss of use of dominant upper extremity"

was severe, it did not meet or medically equal any listing.  At step four, the ALJ found

that Plaintiff had the residual functional capacity to perform light work, except:

> the claimant could only lift and carry with his right arm as he has no
> functional use of his dominant left arm and hand.  The claimant could be
> expected to stand up to five hours per day and walk for two hours per day
> for 15 minutes at a time.  He could occasionally stoop, balance, and crouch,
> but never kneel, crawl or climb ladders, ropes, or scaffolds.[2]

Based on vocational expert testimony, the ALJ concluded at step five, that given

Plaintiff's age, education, work experience, and residual functional capacity,  he could

perform work as a ticket-seller, ticket-taker and parking-lot-attendant.

---

[1]Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[2]ECF No.  8, p. 26.

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d at 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

**Discussion**

Plaintiff argues that the Commissioner's decision should be reversed or alternatively remanded for two reasons: (1) the ALJ failed to find that his RSDS/CRPS was a "Step Three CFR-listed disability;" and, (2) the Appeals Council erred by failing to consider new and material evidence.

RSDS/CRPS is a unique chronic pain syndrome "most often resulting from trauma to a single extremity" that typically includes signs of autonomic dysfunction. SSR 03–2p, 2003 WL 22814447, at *1 (2003). Diagnostic criteria include "persistent, intense pain

that results in impaired mobility of the affected region," associated with swelling,

autonomic instability (changes in skin color or texture, changes in sweating, skin

temperature changes, or "gooseflesh"), abnormal hair or nail growth, osteoporosis, or

involuntary movements. *Id* at *2. The pathogenesis of RSDS/CRPS has not been defined

and its "[c]linical progression does not necessarily correlate with specific timeframes."

*Id.*

RSDS/CRPS itself is not a "CFR-listed" impairment. The Social Security

Administration has issued a Social Security Ruling entitled "Evaluating Cases Involving

Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome," to

specifically address how RSDS/CRPS should be evaluated. Social Security Ruling 03-2p

explains in relevant part that:

> RSDS/CRPS patients typically report persistent, burning, aching or searing
> pain that is initially localized to the site of the injury. The involved area
> usually has increased sensitivity to touch. The degree of reported pain is
> often out of proportion to the severity of the precipitating injury. Without
> appropriate treatment, the pain and associated atrophic skin and bone
> changes may spread to involve an entire limb. Cases have been reported to
> progress and spread to other limbs, or to remote parts of the body.
>
> Clinical studies have demonstrated that when treatment is delayed, the signs
> and symptoms may progress and spread, resulting in long-term and even
> permanent physical and psychological problems. Some investigators have
> found that the signs and symptoms of RSDS/CRPS persist longer than 6
> months in 50 percent of cases, and may last for years in cases where
> treatment is not successful.
>
> . . . .
>
> When longitudinal treatment records document persistent limiting pain in an
> area where one or more of these abnormal signs has been documented at
> some point in time since the date of the precipitating injury, disability
> adjudicators can reliably determine that RSDS/CRPS is present and
> constitutes a medically determinable impairment. It may be noted in the
> treatment records that these signs are not present continuously, or the signs

may be present at one examination and not appear at another. Transient findings are characteristic of RSDS/CRPS, and do not affect a finding that a medically determinable impairment is present.

. . . .

It should be noted that conflicting evidence in the medical record is not unusual in cases of RSDS due to the transitory nature of its objective findings and the complicated diagnostic process involved. Clarification of any such conflicts in the medical evidence should be sought first from the individual's treating or other medical sources.

The signs and symptoms of RSDS/CRPS may remain stable over time, improve, or worsen. Documentation should, whenever appropriate, include a longitudinal clinical record containing detailed medical observations, treatment, the individual's response to treatment, complications of treatment, and a detailed description of how the impairment limits the individual's ability to function and perform or sustain work activity over time.

Chronic pain and many of the medications prescribed to treat it may affect an individual's ability to maintain attention and concentration, as well as adversely affect his or her cognition, mood, and behavior, and may even reduce motor reaction times. These factors can interfere with an individual's ability to sustain work activity over time, or preclude sustained work activity altogether. When evaluating duration and severity, as well as when evaluating RFC, the effects of chronic pain and the use of pain medications must be carefully considered.
. . . .

Claims in which the individual alleges RSDS/CRPS are adjudicated using the sequential evaluation process, just as for any other impairment. Because finding that RSDS/CRPS is a medically determinable impairment requires the presence of chronic pain and one or more clinically documented signs in the affected region, the adjudicator can reliably find that pain is an expected symptom in this disorder. Other symptoms, including such things as extreme sensitivity to touch or pressure, or abnormal sensations of heat or cold, can also be associated with this disorder. Given that a variety of symptoms can be associated with RSDS/CRPS, once the disorder has been established as a medically determinable impairment, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. Although symptoms alone cannot be the basis for finding a medically determinable impairment,

once the existence of a medically determinable impairment has been
established, an individual's symptoms and the effect(s) of those symptoms
on the individual's ability to function must be considered both in
determining impairment severity and in assessing the individual's residual
functional capacity (RFC), as appropriate. If the adjudicator finds that pain
or other symptoms cause a limitation or restriction having more than a
minimal effect on an individual's ability to perform basic work activities, a
"severe" impairment must be found to exist. See SSR 96-3p, "Titles II and
XVI: Considering Allegations of Pain and Other Symptoms in Determining
Whether a Medically Determinable Impairment is Severe" and SSR 96-7p,
"Titles II and XVI: Evaluation of Symptoms in Disability Claims:
Assessing the Credibility of an Individual's Statements."

Proceeding with the sequential evaluation process, when an individual is
found to have a medically determinable impairment that is "severe," the
adjudicator must next consider whether the individual's impairment(s)
meets or equals the requirements of the Listing of Impairments contained in
appendix 1, subpart P of 20 CFR part 404. Since RSDS/CRPS is not a listed
impairment, an individual with RSDS/CRPS alone cannot be found to have
an impairment that meets the requirements of a listed impairment. However,
the specific findings in each case should be compared to any pertinent
listing to determine whether medical equivalence may exist. Psychological
manifestations related to RSDS/CRPS should be evaluated under the mental
disorders listings, and consideration should be given as to whether the
individual's impairment(s) meets or equals the severity of a mental listing.

SSR 03–2p, at * 2-6.

In the present case, the record establishes that Plaintiff was diagnosed with

RSDS/CRPS following an injury to his left elbow in 2007.  Yet, RSDS/CRPS does not

appear in the ALJ's step two discussion as either a severe or a non-severe impairment,

and the ALJ does not cite SSR 03-2p anywhere in his opinion.  Although Plaintiff does

not specifically raise either point on appeal, he contends that the ALJ erred in failing to

find that his RSDS/CRPS medically equaled a C.F.R. listed impairment at step three of

the sequential evaluation.

The Commissioner argues that the ALJ did not commit reversible error because he

considered Listing 1.02 (major dysfunction of a joint) and 11.04 (peripheral neuropathy)

6

in compliance with SSR 03-2p.  Both Listings 1.02 and 11.04 require that the claimant be

unable to perform fine and gross movements in both upper extremities.  Because the

record reflects that "there is no impairment to the claimant's non-dominant right arm," the

Commissioner argues that the ALJ properly found that Plaintiff did not meet either listing

at step three.

The undersigned finds that the ALJ's failure to evaluate Plaintiff's RSDS/CRPS in

compliance with SSR 03-2P at any step of the sequential evaluation was error.  *Volk v.

Astrue*, 3:11-CV-533-J-TEM, 2012 WL 4466480, at *4 (M.D. Fla., Sept.  27, 2012)*;  See

Hill v. Astrue,* No. 6:10–CV–46–ORL–GJK, 2011 WL 679940, at *10 (M.D. Fla.  Feb.16,

2011)("The ALJ's failure to evaluate RSDS in accordance with SSR 03–2p at step two of

the sequential evaluation process necessarily undermines the ALJ's RFC assessment,

credibility determination, and hypothetical question to the VE."); *Engberg v. Astrue*, No.

3:10–CV–64/RV/EMT, 2011 WL 3273959, at *10 (N.D. Fla. June 29, 2011), adopted by

2011 WL 3273933 ("[A]lthough the ALJ failed to properly evaluate Plaintiff's

RSDS/CRPS and weigh the medical opinions related thereto, the error began at the first

stages of the sequential evaluation and—in the undersigned's opinion—affected all

subsequent analyses.").  Although the ALJ gave a thorough and detailed summary of the

medical evidence, "the mere mention of diagnosis and symptoms which may be

associated with [RSDS/CRPS] does not equate to an evaluation of the intensity,

persistence, and limiting effects of Plaintiff's [RSDS/CRPS]." *Bernstein v. Astrue,* No.

3:09–CV–17–J–34 MCR, 2010 WL 746491, at *5 n. 9 (M.D. Fla.  Mar. 3, 2010); *Hill*,

2011 WL 679940, at *11.

The ALJ's adverse credibility determination, for example, was likely a result of his

failure to adequately evaluate Plaintiff's RSDS/CRPS in accordance with SSR 03-2p.

Although the ALJ acknowledged that physicians had diagnosed Plaintiff with

RSDS/CRPS, he noted that other physicians had not.  He also noted that "a year after his

injury, the claimant's physicians remained at a loss with regard to the underlying cause of

the claimant's pain."  Much of the ALJ's opinion, in fact, focuses on the lack of objective

medical evidence supporting Plaintiff's subjective complaints of pain.  With regard to

Plaintiff's credibility, the ALJ notes that:

> . . . The claimant has been seen by a number of physicians that cannot agree on a single diagnosis for the claimant's left arm problem.  This seems to stem from the fact that diagnostic imaging, nerve conduction studies, and a number of physical examinations can find no mechanical reason for his impairment.  Ganglion blocks as well as medication has led to great relief at times, but has also had no effect on the claimant.  Dr. Vohra suggested the claimant's problems may be psychological, but there is no evidence he ever underwent any testing. Regardless of whether the claimant has reflex sympathetic dystrophy, disuse syndrome, complex regional pain syndrome, or a somatic disorder, the result is the same.  The claimant has established that he is unable to use his dominant left upper extremity.  This residual functional capacity takes that limitation into account.[3]

These statements do not reflect a consideration of the progressive and transient

nature of RSDS/CRPS.  It "is characteristic of [RSDS/CRPS] that the degree of pain

reported is out of proportion to the severity of the injury sustained by the individual," and

"conflicting evidence in the medical record is not unusual in cases of [RSDS/CRPS] due to

---

[3]ECF No.  8, p.  27.

the transitory nature of its objective findings and the complicated diagnostic process involved." SSR 03–2p at *1, *5. That physicians could not agree on a diagnosis is not unusual. Three physicians diagnosed Plaintiff with RSDS/CRPS: Dr. Katz, Dr. Laseter, and Dr. McRaney. The only physicians to opine that Plaintiff's impairments did not "clinically meet the criteria" for RSDS/CRPS was Dr. Vise in February 2008, and Dr. Collipp in November 2007, who opined that Plaintiff had disuse atrophy of the left upper limb secondary to the left elbow injury. Since these initial assessments, the records show that Plaintiff's condition continued to worsen. By February 2009, well before his date last insured, Plaintiff was consistently diagnosed and treated for RSDS/CRPS, Stage II. Further, RSDS/CRPS is established by "the presence of persistent complaints of pain that are typically out of proportion to the severity of any documented precipitant." SSR 03-2p instructs adjudicators that "conflicting evidence in the medical record is not unusual in cases of RSDS/CRPS due to the transitory nature of its objective findings and the complicated diagnostic process involved." *Id.* The ruling further provides that "clarification of any such conflicts in the medical evidence should be sought first from the individual's treating or other medical sources." *Id.* That was not done here.

The Court notes that the lack of objective medical findings and diagnoses was one of several factors cited by the ALJ in assessing Plaintiff's credibility. The ALJ noted, for example, that Plaintiff compensates for the loss of function in his left arm by using self-taught accommodations to attend to his needs while his wife works, and in his daily

activities, i.e., to cook, help with chores, dress himself, and walk the dog.  The ALJ also

questioned the genesis of Plaintiff's standing and walking limitations because Plaintiff

stated that he frequently wears a sling to stabilize the movement in his arm.  The ALJ also

cited two instances in the record that he believed "denotes activity in excess of what

[Plaintiff] has alleged he is capable of performing."  Specifically, the ALJ explained that:

> In April 2009, he reported with a poison ivy rash on his head.  To not only
> get poison ivy, but to get it on one's head suggests a level of outdoor activity
> in excess of what the claimant's allegations would support.  In May 2009,
> the claimant reported that he got scratched while playing with a puppy.
> Again, this suggests a level of activity in excess of what the claimant's
> allegations would support.[4]

The Court finds it debatable whether either incident actually discredits Plaintiff's

allegations of pain, given the transient nature of RSDS/CRPS.  The record contains very

little information about either incident, and the ALJ did not question Plaintiff about the

incidents at the administrative hearing.

Although the ALJ articulates other bases for his adverse credibility determination, it

is not clear that the ALJ carefully considered "the effects of pain and its treatment on

[Plaintiff's] capacity to do sustained work-related physical and mental activities in a work

setting on a regular and continuing basis." SSR 03-2P.  The ALJ essentially concludes that

Plaintiff's underlying diagnosis is irrelevant because "the result is the same"– i.e., he can

perform light work subject to the lifting, postural, and exertional limitations of his residual

functional capacity.  However, the Court is uncertain whether the ALJ considered the

---

[4]ECF No.  8, p.  27.

characteristics of this "unique clinical syndrome," given his failure to address or cite SSR -
03-2p. *Shepard v. Colvin*, No. 12-CV-14386, 2013 WL 6062006 (E.D. Mich.  Nov. 18,
2013).

On this record, the undersigned cannot confidently conclude that the ALJ applied
the proper legal standard in evaluating Plaintiff's RSDS/CRPS.  The undersigned does not
suggest that Plaintiff is disabled due to his RSDS/CRPS.  In fact, further analysis on
remand may very well result in the same conclusion.  However, SSR 03-2p is very specific
and should have been utilized throughout the process of evaluating Plaintiff's claim. The
failure to do so was reversible error and could have prejudiced the result.  Because of this
finding, Plaintiff's second assignment of error is not addressed.

For all these reasons, the undersigned recommends that the ALJ's decision should
be remanded for further consideration consistent with this decision.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States
District Courts for the Northern District of Mississippi and the Southern District of
Mississippi, any party within 14 days after being served with a copy of this Report and
Recommendation, may serve and file written objections.  Within 7 days of the service of
the objection, the opposing party must either serve and file a response or notify the District
Judge that he or she does not intend to respond to the objection.

11

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636.

This the 29th day of July 2015.

/s/  Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE